UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| **EMMETT JONES, JR.** | * | **CIVIL ACTION NO. 11-0368** |
| **VERSUS** | * | **JUDGE DONALD E. WALTER** |
| **MICHAEL J. ASTRUE, COMMISSIONER, SOCIAL SECURITY ADMINISTRATION** | * | **MAG. JUDGE KAREN L. HAYES** |

## REPORT & RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits. The district court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons assigned below, it is recommended that the decision of the Commissioner be **REVERSED and REMANDED for further proceedings.**

### Background & Procedural History

Emmett Jones, Jr. protectively filed the instant applications for Title II Disability Insurance Benefits and Title XVI Supplemental Security Income payments on February 6 and May 12, 2008, respectively. *See* Tr. 11, 106-120. He alleged disability as of August 1, 2007, because of diabetes, right eye blindness, and high blood pressure. (Tr. 127). The claims were denied at the initial stage of the administrative process. (Tr. 45-46). Thereafter, Jones requested and received a January 7, 2009, hearing before an Administrative Law Judge ("ALJ"). (Tr. 21-44, 47-50). However, in a May 20, 2009, written decision, the ALJ determined that Jones was not disabled under the Act, finding at Step Five of the sequential evaluation process that he was able to make an adjustment to other work that exists in substantial numbers in the national

economy. (Tr. 8-20). Jones appealed the adverse decision to the Appeals Council. On January 7, 2011, however, the Appeals Council denied Jones's request for review; thus the ALJ's decision became the final decision of the Commissioner. (Tr. 1-3).

On March 7, 2011, Jones sought review before this court. He alleges the following errors:

(1) the ALJ erred by failing to consider the full impact of plaintiff's visual impairment on his ability to work;

(2) the ALJ's decision to reject the medical source statement of his treating nurse practitioner is not supported by substantial evidence; and

(3) the ALJ's credibility determination is not supported by substantial evidence.

### **Standard of Review**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards. *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401. Substantial evidence lies somewhere between a scintilla and a preponderance. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the

Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (citation omitted).

## Determination of Disability

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work. *See* 42 U.S.C. § 423(d)(2)(A). Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA. *See* 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows,

(1) An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

(2) An individual who does not have a "severe impairment" of the requisite duration will not be found disabled.

(3) An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.

(4) If an individual's residual functional capacity is such that he or she can

>       still perform past relevant work, then a finding of "not disabled" will be
>       made.
>
> (5)   If an individual is unable to perform past relevant work, then other factors
>       including age, education, past work experience, and residual functional
>       capacity must be considered to determine whether the individual can make
>       an adjustment to other work in the economy.

*See Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001); 20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## Analysis

### I. Steps One, Two, and Three

The ALJ determined at step one of the sequential evaluation process that Jones had not engaged in substantial gainful activity during the relevant period. (Tr. 13). At step two, he found that he suffers severe impairments of diabetes mellitus; partial amputation of the right foot, status post-non-healing diabetic foot ulcer; hypertension; right neovascular glaucoma with right eye blindness; and history of substance abuse. *Id*. He concluded, however, that the impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, at step three of the process. (Tr. 13-14).

### II. Residual Functional Capacity

The ALJ next determined that Jones retained the residual functional capacity to perform

light work,[1] except that he can lift ten pounds occasionally and frequently; stand and/or walk for two hours in an eight hour work day; and sit for six hours. (Tr. 14). He can never climb ladders, ropes, or scaffolds, but can occasionally climb ramps, stairs, balance, stoop, or crouch, and frequently kneel, and/or crawl. *Id*. He also has mono-vision, with right eye blindness, and 20/25 vision in his left eye. *Id*.

Plaintiff contends that the ALJ's residual functional capacity assessment is not supported by substantial evidence. The court agrees.

The ALJ found that plaintiff had the ability to frequently lift and/or carry ten pounds. However, there is no evidence in the record to support this determination. The non-examining agency physician, Hollis Rogers, M.D., completed a physical residual functional capacity assessment form indicating that plaintiff could frequently lift *less than ten pounds*. (Tr. 223-230) (emphasis added).[2] Moreover, while plaintiff testified that he could lift objects as heavy as a gallon milk jug or an iron skillet, no testimony was elicited from him to establish that he could frequently carry such weights. *See* Tr. 31-32.

---

[1] Light work contemplates:
> . . . lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

[2] The Commissioner concedes that the ALJ relied upon Dr. Rogers' assessment. (Def. Response, pg. 4).

The ALJ stated that the record contained assessments by plaintiff's treating physicians, and that he was affording "controlling weight" to the treating physician's opinion. (Tr. 18). The difficulty with this statement, however, is that no treating physician rendered a comprehensive opinion regarding the limitations imposed by plaintiff's impairments – at least as of the time of the ALJ's decision. Rather, the only treating source to have completed a medical source statement was a nurse practitioner, who indicated that Jones could *not* lift *any* weight on a frequent basis. (Tr. 233). However, the ALJ purported to discount her statement on the twin grounds that no treating physician had imposed similar limitations, and because a statement that a claimant is disabled or unable to work is not entitled to any weight under the regulations. (Tr. 18).[3]

While the ALJ was correct that, at least as of the time of his decision, no treating physician had imposed limitations as stringent as those imposed by the nurse practitioner, that circumstance changed when plaintiff submitted to the Appeals Council a medical source statement from his treating physician, Joseph Reynolds, M.D., wherein he indicated that Jones could not lift any weight at all. (Tr. 327). Evidence submitted by the claimant to the Appeals Council constitutes part of the instant record and provides a basis for remand so long as it is new, material and related to the period before the ALJ's decision. *See Higginbotham v. Barnhart* 405 F.3d 332 (5th Cir. 2005).[4] While the medical source statement is dated August 3, 2009, Dr.

---

[3] Although a nurse practitioner is not considered an "acceptable" medical source under the regulations, and therefore, cannot establish the *existence of a medically determinable impairment*, the Commissioner still may use evidence from these sources to assess the severity of an impairment and how it affects the claimant's ability to work. *See* SSR 06-03p; 20 C.F.R. § 404.1513(d) & 416.913(d). Moreover, the ALJ is required to consider evidence from "other sources"when evaluating an "acceptable medical source's" opinion. SSR 06-03p.

[4] *Higginbotham* cited *Perez v. Chater*, and *Wilkins v. Sec'y Dept. of Health Human Servs.* as support for its finding that post-ALJ evidence is to be considered part of the record.

Reynolds stated that he had been treating Jones since March 2009, i.e. since before the ALJ's decision. (Tr. 327). Moreover, the limitations recognized by Dr. Reynolds are consistent with the limitations imposed by the nurse practitioner on January 7, 2009, contemporaneously with the administrative hearing.

The ALJ further remarked that a consultative physician's assessment of plaintiff's residual functional capacity was well-supported. (Tr. 18). However, the sole consultative physician in this case was Bruce Torrance, M.D., who indicated that plaintiff had "some limitation in ability to walk, lift, carry, and stand given [his] right transmetatarsal amputation of his foot." (Tr. 222). Torrance, however, did not hazard an opinion on the maximum weight that plaintiff could lift and/or carry on a frequent basis.

In short, the record remains devoid of any evidence that would substantially support the ALJ's determination that plaintiff could frequently lift and or carry ten pounds.

## III. Steps Four through Five and Remand

Because the Commissioner's step four and step five determinations were premised upon a residual functional capacity assessment that is not supported by substantial evidence, the court further finds that the Commissioner's ultimate conclusion that plaintiff is not disabled also is not supported by substantial evidence. The ALJ's hypotheticals to the vocational expert did not include a claimant with the ability to frequently lift and carry less than ten pounds. (Tr. 40-41). Moreover, if the hypothetical claimant were reduced to frequently lifting five pounds, the vocational expert testified that there would not be any jobs available in the national or regional

---

*See, Higginbotham*, 405 F.3d at fn. 3 (*citing inter alia*, *Perez v. Chater*, 77 F.3d 41, 44–45 (2d Cir.1996) and *Wilkins v. Sec'y, Dept. of Health Human Servs*., 953 F.2d 93, 96 (4th Cir.1991) (*en banc*)). Both *Perez* and *Wilkins* require that the subsequent evidence be new, material and relevant to the pre-ALJ decisional period. *Perez, supra*; *Wilkins, supra* (citing, 20 C.F.R. § 404.970(b)).

economy. (Tr. 41).[5]

Plaintiff urges the court to enter a judgment awarding benefits. The courts have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. §405(g). When reversal is warranted, the matter is remanded with instructions to make an award only if the record enables the court to conclusively determine that the claimant is entitled to benefits. *See Ferguson v. Heckler*, 750 F.2d 503, 505 (5th Cir. 1985); *see also Rini v. Harris*, 615 F.2d 625, 627 (5th Cir.1980) (reversing and remanding with direction to enter judgment where the evidence was not substantial and the record clearly showed the claimant's right to benefits).

The instant record is not so disposed. At a minimum, the ALJ will need to resolve how much weight plaintiff can lift and carry on a frequent basis. To do so, he will need to reconcile Dr. Rogers' statement with the statement provided by plaintiff's treating physician, Dr. Reynolds.[6]

## Conclusion

For the above-stated reasons,

---

[5] The vocational expert stated that his testimony was consistent with the Dictionary of Occupational Titles ("DOT"). (Tr. 43). According to the DOT, however, the job of telephone quotation clerk involves lifting but a negligible amount of force on a frequent basis. *See* DOT 237.367-046. The ALJ will need to resolve this inconsistency upon remand.

[6] Dr. Rogers' limitation that plaintiff can frequently lift less than ten pounds is not necessarily inconsistent with Dr. Reynolds' limitation. "Less than 10 pounds," was the most limited option available on the form completed by Dr. Rogers. *See* Tr. 224. Morever, in such situations, the instructions on the form require the medical consultant to quantify the extent of the limitation. *Id*. Rogers did not do so, however.
Plaintiff raises additional challenges to the ALJ's residual functional capacity assessment. The court, however, need not reach these issues; they may be addressed upon remand.

**IT IS RECOMMENDED** that the Commissioner's decision be **REVERSED** and **REMANDED** pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings consistent herewith.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED in chambers, at Monroe, Louisiana, this 27th day of June 2012.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE